## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

ANTHONY HAMMOND MURPHY,

                Plaintiff,

    v.

PURA SCENTS, INC.,

                Defendant.

Civil Action No. 1:23-cv-00077

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Lawrence H. Fisher
Pa. No. 67667
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Tel. (412) 577-4040
lawfirst@lawrencefisher.com

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

I.     INTRODUCTION ......................................................................................... 1

II.    THE DEPARTMENT OF JUSTICE'S 2023 WEB ACCESSIBILITY NPRM .............. 2

III.   FACTUAL AND PROCEDURAL BACKGROUND .......................................... 3

IV.    STANDARD OF REVIEW ........................................................................... 4

V.     ARGUMENT ............................................................................................. 4

       A.    Applicable Law .............................................................................. 4

       B.    Plaintiff Is An Individual With A Disability ......................................... 6

       C.    Defendant Is A Public Accommodation .............................................. 6

             (i)    Title III's text does not include a "physical nexus" requirement ............. 7

             (ii)   A "physical nexus" requirement would undermine the ADA's
                    purpose ............................................................................. 9

             (iii)  A "physical nexus" requirement would undermine the ADA's
                    legislative history ............................................................... 11

             (iv)   Since at least 2000, DOJ has consistently provided there is no
                    "physical nexus" requirement .................................................. 12

             (v)    Defendant owns, operates, and controls the property where
                    Plaintiff was discriminated, thereby distinguishing this case from
                    the Third Circuit cases Defendant cites without explanation ................. 14

             (vi)   If Defendant's understanding of *Ford* and *Peoples* were once correct,
                    it has been superseded by controlling authority ..................................... 14

       D.    Defendant Violated Title III's Anti-Discrimination Mandate And
             Effective Communication Requirement............................................... 15

VI.    CONCLUSION ...................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................4

*Bostock v. Clayton Cty.*,
  140 S. Ct. 1731 (2020) .......................................................................... 8, 9, 14, 17

*Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n*,
  37 F.3d 12 (1st Cir. 1994) ..........................................................................7, 9

*Clark v. McCormick & Co., Inc.*, No. 1:19-cv-00301-AJS,
  Doc. 99 (W.D. Pa. Jan. 16, 2020) ..............................................................7

*Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744,
  2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) ...........................7, 9, 11

*Doe v. Mut. of Omaha Ins. Co.*,
  179 F.3d 557 (7th Cir. 1999) ........................................................................7

*Douglass v. Blendjet Inc.*, No. 2:22-cv-00936-AJS,
  Doc. 158 (W.D. Pa. Oct. 3, 2022) ...............................................................7

*Douglass v. Blendjet Inc.*, No. 2:22-cv-00936-AJS,
  2022 U.S. Dist. LEXIS 171718 (W.D. Pa. Sept. 22, 2022).............................7, 10

*Douglass v. Hedley & Bennett, Inc.*, No. 2:21-cv-01165-AJS,
  Doc. 107 (W.D. Pa. Dec. 9, 2021) ...............................................................7

*Douglass v. Hedley & Bennett, Inc.*, No. 2:21-cv-01165-AJS,
  Doc. 33 (W.D. Pa. Oct. 14, 2021) ...............................................................7

*Douglass v. '47 Brand, LLC*, No. 2:20-cv-00491-AJS,
  Doc. 138 (W.D. Pa. Aug. 21, 2020)..............................................................7

*Douglass v. '47 Brand, LLC*, No. 2:20-cv-00491-AJS,
  Doc. 92 (W.D. Pa. July 8, 2020)...................................................................7

*Ford v. Schering-Plough Corp.*,
  145 F.3d 601 (3d Cir. 1998) ........................................................................14

*Gniewkowski v. Lettuce Entertain You Enters., Inc.*,
  251 F. Supp. 3d 908 (W.D. Pa. 2017) ...........................................7, 9, 16, 17

*McGann v. Cinemark USA, Inc.,*
    873 F.3d 218 (3d Cir. 2017) ................................................................. 4, 5, 15, 17

*Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-cv-00239-RAL-SPB,
    2020 U.S. Dist. LEXIS 139887 (W.D. Pa. Aug. 4, 2020)................................... 7, 9, 10, 14, 15

*Peoples v. Discover Fin. Servs., Inc.,*
    387 F. App'x 179 (3d Cir. 2010) ........................................................................14

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) ...................................................9

*Phillips v. Cty. Of Allegheny,*
    515 F.3d 224 (3d Cir. 2008) ......................................................................4

*Riccio v. Sentry Credit, Inc.,*
    954 F.3d 582 (3d Cir. 2020) ..........................................................................8, 17

*South Dakota v. Wayfair, Inc.,*
    138 S. Ct. 2080 (2018) ....................................................................... 1, 14, 15, 17

*Suchenko v. ECCO USA, Inc*., No. 2:18-cv-00562,
    2018 U.S. Dist. LEXIS 129862 (W.D. Pa. Aug. 2, 2018)...................................7, 17

*Suchenko v. ECCO USA, Inc*., No. 2:18-cv-00562,
    2018 U.S. Dist. LEXIS 139050 (W.D. Pa. Aug. 16, 2018)..........................7, 10, 17

*West v. DocuSign, Inc*., No. 2:19-cv-00501-AJS,
    2019 U.S. Dist. LEXIS 138379 (W.D. Pa. Aug. 15, 2019)................................7, 16

## Rules & Regulations

Fed. R. Civ. P. 12(b)(6)...............................................................................1, 4, 16

28 C.F.R. § 36.303 ...........................................................................................5

## Statutes

42 U.S.C. § 12102...........................................................................................6

42 U.S.C. § 12181 .......................................................................................1, 6, 12

42 U.S.C. § 12182...................................................................................4, 5, 15

**Other Authorities**

Brief of the United States as Amicus Curiae in Support of Appellant,
  *Hooks v. Okbridge, Inc.*, No. 99-50891 (5th Cir. June 30, 2000)
  *available at*
    https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/hooks.pdf .........................12

Brief for the United States as Amicus Curiae in Support of Appellant,
  *Rendon v. Valleycrest Productions, Inc.*, No. 01-11197, 294 F.3d 1279 (11th Cir. 2002)
  *available at*
    https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/rendon.pdf ........................13

Comment from disability rights organizations to DOJ Supplemental Advance Notice of Proposed
  Rulemaking, "Nondiscrimination on the Basis of Disability; Accessibility of Web Information
  and Services of State and Local Government Entities," CRT Docket No 128, RIN 119 -AA65,
  Answer 57 (October 7, 2016) ............................................................................................10

Dep't of Justice, *Guidance on Web Accessibility and the ADA* (Mar. 18, 2022)
  *available at*
    https://www.ada.gov/resources/web-guidance/ ......................................................13

Dep't of Justice, *ADA Requirements: Effective Communication* (Jan. 2014)
  *available at*
    http://www.ada.gov/effective-comm.htm ................................................................6

Dep't of Justice, *Nondiscrimination on the Basis of Disability: Accessibility of Web Information
  and Services of State and Local Government Entities*, CRT Docket No. 144; AG Order No.
  5729-2023 (July 2023)
  *available at*
    https://public-inspection.federalregister.gov/2023-15823.pdf ...................................2

Emily Heaslip, U.S. Chamber of Commerce, 5 Ways to Optimize Your E-Commerce Site for
  Mobile Shopping
  *available at*
    https://www.uschamber.com/co/run/technology/building-mobile-friendly-
ecommerce-websites .........................................................................................................9, 10

Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability
  by Public Accommodations and Commercial Facilities, Appendix A to Part 36
  *available at*
    https://www.ecfr.gov/current/title-28/chapter-I/part-36/appendix-
  Appendix%20A%20to%20Part%2036 ....................................................................................5

H.R. Rep. 101-485, 108, 1990 U.S.C.C.A.N. 303, 391 ........................................................9, 11

Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division, Department of
    Justice, to Tom Harkin, U.S. Senator (Sept. 9, 1996),
    *available at*
    https://www.justice.gov/crt/foia/file/666366/download ........................................................12

*Magee v. Coca-Cola Refreshments USA, Inc.*, No. 16-6688, Brief for the United States as
    Amicus Curiae, (July 2017)
    *available at*
    https://www.justice.gov/crt/case-document/file/984256/download...................................11, 12

S.Rep. No. 116, 101st Cong., 1st Sess. (1989) ............................................................................9

Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and
    Peapod, LLC, DJ 202-63-169 (Nov. 17, 2014),
    *available at*
    https://www.justice.gov/file/163956/download ...................................................................13

## I.    INTRODUCTION

Plaintiff Anthony Hamond Murphy filed a one-count Complaint alleging that Defendant Pura Scents, Inc. denies and will continue to deny him full and equal access to its retail store, a violation of the rights guaranteed by Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 to 12189 ("Title III"), because the store is not compatible with screen reader software, which Plaintiff and millions of other blind consumers use to access digital content. (Doc. 1.)

Defendant moved to dismiss Plaintiff's claim under Fed. R. Civ. P. 12(b)(6), arguing that "a public accommodation under Title III requires the existence of a **physical** place of public accommodation" and that Plaintiff has not "identifie[d] a physical place of business that Pura 'owns, leases (or leases to), or operates' or a nexus between the alleged denial of services and a physical place of business owned, leased, or operated by Pura." (Doc. 14, pp. 3-4, 5 (emphasis in original).) In support, Defendant points to three cases from the Third Circuit where the defendants did not own, operate, or control the properties at issue, and a non-binding case from the Eastern District of Pennsylvania that failed to even analyze the text of Title III. Defendant has not explained, distinguished, or cited the dozen or so decisions from this District, including this Court, that have expressly rejected or cast doubt on Defendant's singular argument defending its legal right to discriminate against shoppers with disabilities.

Defendant's interpretation of Third Circuit authority is flawed and, in either event, has been superseded by authority from the United States Supreme Court, namely *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018) ("*Wayfair*") and *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020). The Court should deny Defendant's motion.

## II.       THE DEPARTMENT OF JUSTICE'S 2023 WEB ACCESSIBILITY NPRM

On July 21, 2023, the Civil Rights Division of the United States Department of Justice issued a Notice of Proposed Rulemaking, entitled *Nondiscrimination on the Basis of Disability: Accessibility of Web Information and Services of State and Local Government Entities*, CRT Docket No. 144; AG Order No. 5729-2023, available at https://public-inspection.federalregister.gov/2023-15823.pdf ("NPRM").[1]

The NPRM confirms what Plaintiff already knows, that "access to the web has become increasingly important as a result of the COVID-19 pandemic, which shut down workplaces, schools, and in-person services, and has forced millions of Americans to stay home for extended periods. In response, the American public has turned to the web for work, activities, and learning." (NPRM, pp. 21-22.) Unfortunately, "[i]ndividuals with disabilities can often be denied equal access to many services, programs, and activities because many public entities' web content is not fully accessible. Thus, there is a digital divide between the ability of people with certain types of disabilities and people without those disabilities to access the services, programs, and activities of their State and local government entities." (NPRM, p. 23.)

This digital divide exists because voluntary compliance with digital accessibility standards has proven ineffective to ensure individuals with disabilities, including blind Americans, like Plaintiff, have full and equal access to the internet, like Defendant's online store. (NPRM, p. 27 ("*Voluntary Compliance with Technical Standards for Web Accessibility Has Been Insufficient in Providing Access*").) Specifically, Attorney General Merrick Garland notes:

---

[1] Although the NPRM focuses on Title II government services, in undersigned's experience, most—if not all—of the Department's observations in the NPRM apply with equal force to the struggles that blind Americans face in attempting to access the digital services provided by public accommodations, like Defendant, covered under Title III.

> [D]espite the availability of voluntary web and mobile app accessibility standards; the Department's clearly stated position that all services, programs, and activities of public entities, including those available on websites, must be accessible; and case law supporting that position, individuals with disabilities continue to struggle to obtain access to the websites of public entities.

(NPRM, p. 27 (internal citations omitted).)

This is true even though "removing certain website barriers is neither difficult nor especially costly. For example, the addition of invisible attributes known as alt text or alt tags to an image helps orient an individual using a screen reader and allows them to gain access to the information on the website. Alt text can be added to the coding of a website without any specialized equipment. Similarly, adding headings, which facilitate page navigation for those using screen readers, can often be done easily as well." (NPRM, p. 26 (internal citations omitted.)

In sum, the Department's NPRM confirms that as of July 2023, website operators, like Defendant, continue to deny full and equal access to blind Americans, like Plaintiff, despite the nonburdensome costs required to comply with existing law.

## III.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is blind and, as a result of his blindness, uses screen reader auxiliary aids to access digital information. (Doc. 1, ¶ 1.) Defendant "is a retailer that sells fragrances and diffusers to consumers" at a store it operates online at https://www.trypura.com/, and available in the Apple App Store and Google Play (collectively, "Online Store" or "Digital Platform"). (*Id.*, ¶ 2.) Plaintiff alleges that Defendant denies him full and equal access to the Online Store because Defendant has failed to make the Online Store compatible with screen reader software, thereby denying Plaintiff and millions of other potential consumers from fully and equally enjoying Defendant's products and services. (*Id.*, ¶¶ 3, 6.)

For example, Plaintiff alleges that Defendant fails to notify blind shoppers, like him, of pop-up windows featuring promotional information, including an opportunity to "Get 15% off!

Sign up for our newsletter to get updates for the best that Pura has to offer, like new scents and brand partnerships." (*Id.*, ¶ 31(a).) As a result, Plaintiff alleges "it is impossible for Plaintiff to perceive this promotion independently, the effect of which would require him to pay more on his order than consumers who do not use screen reader technology to shop online." (*Id.*)

Plaintiff alleges the barriers to Defendant's online store "humiliate and deter [Plaintiff] from returning to the [Online Store], where he cannot help but feel second-class." (*Id.*, § 33.) Plaintiff alleges that, despite this, he "intends to attempt to access the [Online Store] within the next six months to determine if it is accessible and, if so, to potentially explore the community, products, and services Defendant offers at that time." (*Id.*, ¶ 34.)

## IV.    STANDARD OF REVIEW

Rule 12(b)(6) provides for the dismissal of complaints that fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Where the plaintiff alleges facts that entitle them to relief, a Rule 12(b)(6) motion should be denied. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

## V.    ARGUMENT

### A.    Applicable Law

"Title III begins with a '[g]eneral rule' that '[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'" *McGann v. Cinemark USA, Inc*., 873 F.3d 218, 222 (3d Cir. 2017) (quoting 42 U.S.C. § 12182(a)).

From there, the statute contains "several 'general prohibitions,'" including a prohibition against "denying an individual on the basis of a disability 'the opportunity . . . to participate in or benefit from the goods [or] services' of a public accommodation." *McGann*, 873 F.3d at 222 (quoting 42 U.S.C. § 12182(b)(1)(A)(i)).

These "general prohibitions" are supplemented further by "several 'specific prohibitions,'" including an "auxiliary aids and services" requirement, which "requires public accommodations to 'take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.'" *McGann*, 873 F.3d at 222 (emphasis omitted) (quoting 42 U.S.C. § 12182(b)(2)(A)(iii)).

The Department of Justice ("DOJ") issued regulations to implement Title III, including the above "auxiliary aid and service" requirement. *McGann*, 873 F.3d at 222. These regulations define "screen reader software" as being a covered "auxiliary aid and service." 28 C.F.R. § 36.303(b)(2). The regulations "also include[] an effective communication requirement," which requires public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." *McGann*, 873 F.3d at 222-23 (quoting 28 C.F.R. § 36.303(c)(1)).

"DOJ regulatory guidance notes that the duty to provide effective communication with customers is 'implicit' in the duty of a public accommodation to provide auxiliary aids and services." *McGann*, 873 F.3d at 223 (quoting Appendix A to Part 36 - Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities, available at https://www.ecfr.gov/current/title-28/chapter-I/part-36/appendix-Appendix%20A%20to%20Part%2036 (last visited June 13, 2023)). DOJ has also

issued a Technical Assistance Publication, which provides guidance on "communicating effectively with individuals who have vision, hearing, or speech disabilities." *Id.* (citing Dep't of Justice, *ADA Requirements: Effective Communication* (Jan. 2014), available at http://www.ada.gov/effective-comm.htm (last visited June 13, 2023). This publication requires the provision of "information technology that is accessible (either independently or through assistive technology such as screen readers)." *Id.*

### B.    Plaintiff Is An Individual With A Disability.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]" 42 U.S.C. § 12102(1)(A). The ADA defines "major life activities" to include "seeing[.]" *Id.* § 12102(2)(A). The Complaint alleges that Plaintiff is blind. (Doc. 1, ¶ 1.) Accepting these allegations as true, the Complaint sufficiently alleges that Plaintiff is an individual with a "disability."

### C.    Defendant Is A Public Accommodation.

Title III defines a "public accommodation" as including "a bakery, grocery store, . . . or other sales . . . establishment[.]" 42 U.S.C. § 12181(7)(E). The Complaint alleges that Defendant is a retailer that sells "fragrances and diffusers to consumers." (Doc. 1, ¶ 2.) Accepting these allegations as true, the Complaint sufficiently alleges that Defendant is a "sales…establishment," thereby qualifying as a "public accommodation" for purposes of Title III.

Notwithstanding the plain meaning of Title III, Defendant argues that "a public accommodation under Title III requires the existence of a **physical** place of public accommodation" and that Plaintiff has not "identifie[d] a physical place of business that Pura 'owns, leases (or leases to), or operates' or a nexus between the alleged denial of services and a physical place of business owned, leased, or operated by Pura." (Doc. 14, pp. 3-4, 5 (emphasis in original).)

6

Defendant is wrong for at least 6 reasons.

      **(i)**      **Title III's text does not include a "physical nexus" requirement.**

Courts in this District have repeatedly rejected Defendant's "physical nexus" or "brick-and-mortar" requirement because it appears nowhere in the text of Title III. *See Douglass v. Blendjet Inc.*, No. 2:22-cv-936-AJS, Doc. 158 (W.D. Pa. Oct. 3, 2022); *Douglass v. Blendjet Inc.*, No. 2:22-cv-936-AJS, 2022 U.S. Dist. LEXIS 171718 (W.D. Pa. Sept. 22, 2022); *Douglass v. Hedley & Bennett, Inc.*, No. 2:21-cv-1165-AJS, Doc. 107 (W.D. Pa. Dec. 9, 2021); *Douglass v. Hedley & Bennett, Inc.*, No. 2:21-cv-1165-AJS, Doc. 33 (W.D. Pa. Oct. 14, 2021); *Douglass v. '47 Brand, LLC*, No. 2:20-cv-491-AJS, Doc. 138 (W.D. Pa. Aug. 21, 2020); *Douglass v. '47 Brand, LLC*, No. 2:20-cv-491-AJS, Doc. 92 (W.D. Pa. July 8, 2020); *Clark v. McCormick & Co., Inc.*, No. 1:19-cv-301-AJS, Doc. 99 (W.D. Pa. Jan. 16, 2020); *West v. DocuSign, Inc.*, No. 2:19-cv-501-AJS, 2019 U.S. Dist. LEXIS 138379 (W.D. Pa. Aug. 15, 2019); *Suchenko v. ECCO USA, Inc.*, No. 2:18-cv-562, 2018 U.S. Dist. LEXIS 139050 (W.D. Pa. Aug. 16, 2018); *Suchenko v. ECCO USA, Inc.*, No. 2:18-cv-562, 2018 U.S. Dist. LEXIS 129862 (W.D. Pa. Aug. 2, 2018); and *Gniewkowski v. Lettuce Entertain You Enters., Inc.*, 251 F. Supp. 3d 908 (W.D. Pa. 2017).[2, 3]

---

[2] *See also*, *Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-cv-00239-RAL-SPB, 2020 U.S. Dist. LEXIS 139887, at 14 (W.D. Pa. Aug. 4, 2020) wherein this Court examined these decisions with approval.

[3] Courts in the First, Second, and Seventh circuits have also found that a "physical nexus" requirement does not exist within the text of Title III. *See Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12 (1st Cir. 1994) (finding public accommodations include "providers of services which do not require a person to physically enter an actual physical structure"); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) (finding an "electronic space," such as a website, can be a place of public accommodation); *Del-Orden v. Bonobos, Inc.*, No. 17-cv-2744, 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) (joining the growing number of courts who have held commercial websites are "public accommodations" under the ADA).

These holdings are correct and are consistent with the Supreme Court's 2020 decision in *Bostock v. Clayton Cty.*, where Justice Gorsuch explained that plain terms control even when the legislature may not have anticipated every potential application of its words:

> Those who adopted the Civil Rights Act might not have anticipated their work would lead to this particular result. Likely, they weren't thinking about many of the Act's consequences that have become apparent over the years, including its prohibition against discrimination on the basis of motherhood or its ban on the sexual harassment of male employees. But the limits of the drafters' imagination supply no reason to ignore the law's demands. When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit. . . .
>
> Rather than suggesting that the statutory language bears some other *meaning*, the employers and dissents merely suggest that, because few in 1964 expected today's *result*, we should not dare to admit that it follows ineluctably from the statutory text. When a new application emerges that is both unexpected and important, they would seemingly have us merely point out the question, refer the subject back to Congress, and decline to enforce the plain terms of the law in the meantime.
>
> That is exactly the sort of reasoning this Court has long rejected. Admittedly, the employers take pains to couch their argument in terms of seeking to honor the statute's "expected applications" rather than vindicate its "legislative intent." But the concepts are closely related. One could easily contend that legislators only intended expected applications or that a statute's purpose is limited to achieving applications foreseen at the time of enactment. However framed, the employer's logic impermissibly seeks to displace the plain meaning of the law in favor of something lying beyond it.

*Bostock*, 140 S. Ct. 1731, 1737, 1750 (2020) (emphasis in original); *see also Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (refusing to "[i]nject[] a writing requirement" that did not appear in the text of the statute at issue).

Citing *Bostock*, this Court explained in another digital accessibility case that "although the only 'public accommodations' known to Congress when it adopted the ADA were buildings and ancillary physical facilities, it does not follow that such accommodations are limited to such

8

structures." *Murphy v. Bob Cochran Motors, Inc.*, No. 1:19-cv-00239-RAL-SPB, 2020 U.S. Dist. LEXIS 139887, at \*20 n.5 (W.D. Pa. Aug. 4, 2020). The Court should again reject Defendant's "physical nexus" argument because the argument relies on precisely the type of extratextual considerations the Supreme Court found improper in *Bostock.*

>        (ii)    **A "physical nexus" requirement would undermine the ADA's purpose.**

The purpose of Title III is "to bring individuals with disabilities into the economic and social mainstream of American life...in a clear, balanced, and reasonable manner." *Gniewkowski*, 251 F. Supp. 3d at 915-16 (citing *Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12, 19 (1st Cir. 1994); H.R. Rep. No. 485, 101st Cong., 2d Sess., pt. 2, at 99 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 382). "In drafting Title III, Congress intended that people with disabilities have equal access to the array of goods and services offered by private establishments and made available to those who do not have disabilities. *Id.* (citing S.Rep. No. 116, 101st Cong., 1st Sess. at 58 (1989)).

"Today, few areas are more integral to 'the economic and social mainstream of American life' than the Internet's websites." *Del-Orden v. Bonobos, Inc*., No. 17-cv-2744, 2017 U.S. Dist. LEXIS 209251, at \*24 (S.D.N.Y. Dec. 20, 2017) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (internal alterations omitted)). According to the U.S. Chamber of Commerce, "95% of consumers will buy at least half of their gifts online [in 2020]. Shoppers, especially millennials and Gen Zers, favor the convenience and the great offers and discounts associated more with shopping online than visiting a brick-and-mortar location." Emily Heaslip, U.S. Chamber of Commerce, 5 Ways to Optimize Your E-Commerce Site for Mobile Shopping (Jan. 6, 2020), available at https://www.uschamber.com/co/run/technology/building-mobile-friendly-

ecommerce-websites (last visited June 13, 2023). This is especially true for individuals with disabilities. The National Federation of the Blind explains:

> In many ways, individuals with disabilities rely on Web content more so than their nondisabled peers because of inherent transportation, communication, and other barriers. A blind person does not have the same autonomy to drive to a covered entity's office as a sighted person. A deaf or hard of hearing person does not have the same opportunity to call a covered entity's office. A person with an intellectual disability does not have the same ability to interact independently with the staff at a covered entity's office. The 24-hour-a-day availability of information and transactions on covered entity websites and mobile apps provides a level of independence and convenience that cannot be replicated through any other means. That is why the number of Americans who rely on the Internet has increased year after year and why entities offer information and transactions through that unique medium.

Comment from disability rights organizations to DOJ Supplemental Advance Notice of Proposed Rulemaking "Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities," C RT Docket No 128, RIN 119-AA65, Answer 57 (October 7, 2016) (citations omitted).

Recognizing the undeniable role that e-commerce plays in the twenty-first century, this District has repeatedly found that limiting application of Title III to brick-and-mortar stores would defeat the legislative purposes described above.

> Given that the very purpose of the ADA is to bring individuals with disabilities in to the economic and social mainstream of American life, and considering that Defendant's commerce is conducted online, the only way for individuals with disabilities to access Defendant's products is through a computer. Therefore, this Court finds that Defendant had notice that if its for-profit products — which are sold through the internet — could only reach individuals without a vision impairment or other disability, Defendant would be violating the ADA.

*Suchenko*, 2018 U.S. Dist. LEXIS 139050, at \*7-8; *see also Blendjet Inc.*, 2022 U.S. Dist. LEXIS 171718 at \*13 (same); *Bob Cochran*, 2020 U.S. Dist. LEXIS 139887, at \*20 n.5 ("[A]pplying the accessibility mandates of Title III of the ADA to commercial websites certainly furthers the

legislative objective of the ADA 'to ensure that people with disabilities have access to the same services enjoyed by people who are not disabled."). As in those cases, the Court should reject Defendant's "physical nexus" argument because it undermines the purposes of Title III.

### (iii)    A "physical nexus" requirement would undermine the ADA's legislative history.

The ADA's legislative history reflects Congress's expectation that the statute's broad language would adapt as technology and modes of access evolved. At its passage, the House Committee Report stated, "the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times." H.R. Rep. 101-485, 108, 1990 U.S.C.C.A.N. 303, 391; *see also Del-Orden*, 2017 U.S. Dist. LEXIS 209251, at *25. And thirty years later, DOJ has made clear that Congress's expectation still defines Title III.

In 2017, DOJ confirmed that Title III applies to entities "that utilize technologies or methods of operation that were unknown when the statute was enacted in 1990." *Magee v. Coca-Cola Refreshments USA, Inc.*, No. 16-6688, Brief for the United States as Amicus Curiae, p. 12 (July 2017).[4] In its amicus brief, DOJ explained:

> The term "sales or rental establishment" likewise is not categorically limited to businesses that are staffed by human proprietors or employees. Congress's inclusion of a catch-all provision serves in part to facilitate the ADA's application to new businesses that utilize technologies or methods of operation that were unknown when the statute was enacted in 1990. In particular, businesses may develop sophisticated automation capable of performing complex transactions that closely resemble—or fully replace—the traditional establishments listed in Title III. *See*, *e.g.*, Leena Rao, *Amazon Go Debuts as a New Grocery Store Without Checkout Lines*, Fortune (Dec. 5, 2016), http://fortune.com/2016/12/05/amazon-go-store/ (describing automated grocery store concept). In that situation, a store could qualify as an ADA "sales establishment" even though automated devices perform functions that human employees would have performed when the ADA was enacted . . . By the same token, an automated business of the sort described in

---

[4] This brief is available at https://www.justice.gov/crt/case-document/file/984256/download (last accessed June 13, 2023).

> the text might fall within one of Section 12181(7)'s enumerated categories (*e.g.*, as
> a "grocery store," 42 U.S.C. 12181(7)(E)), even though such automated businesses
> were not familiar to the Congress that enacted the ADA.

*Id*. Like the unstaffed stores described in *Magee*, Defendant's Online Store relies on "automated devices [to] perform functions that human employees would have performed when the ADA was enacted." In both cases, it would be inconsistent with Title III's express legislative history, which directs that the statute "should keep pace with the rapidly changing technology of the times," to find that automated business models are excluded from Title III. The Court should reject Defendant's invitation to apply a "physical nexus" requirement that contradicts the ADA's legislative history.

> ### (iv) Since at least 2000, DOJ has consistently provided there is no "physical nexus" requirement.

DOJ first announced its position that Title III applies to websites of public accommodations in a 1996 letter from Assistant Attorney General Deval Patrick responding to an inquiry by Senator Tom Harkin regarding the accessibility of websites to blind individuals. Letter from Deval L. Patrick, Assistant Attorney General, Civil Rights Division, Department of Justice, to Tom Harkin, U.S. Senator (Sept. 9, 1996), https://www.justice.gov/crt/foia/file/666366/download (last accessed June 13, 2023).

In 2000, DOJ argued to the Fifth Circuit that a business providing services solely over the internet is subject to the ADA's prohibitions on discrimination on the basis of disability. Brief of the United States as Amicus Curiae in Support of Appellant, Hooks v. Okbridge, Inc., No. 99-50891 (5th Cir. June 30, 2000), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/hooks.pdf (last accessed June 13, 2023) ("A COMMERCIAL BUSINESS PROVIDING SERVICES SOLELY OVER THE INTERNET IS SUBJECT TO THE ADA'S

PROHIBITION AGAINST DISCRIMINATION ON THE BASIS OF DISABILITY.") (emphasis in original).

In 2002, DOJ argued to the Eleventh Circuit that there need not be a nexus between a challenged activity and a private entity's "brick-and-mortar" facility to obtain coverage under Title III. DOJ argued that Title III applies to any activity or service offered by a public accommodation, on or off the premises. Brief for the United States as Amicus Curiae in Support of Appellant, *Rendon v. Valleycrest Productions, Inc.*, No. 01-11197, 294 F.3d 1279 (11th Cir. 2002), https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/rendon.pdf (last accessed June. 13, 2023).

In 2014, DOJ entered into a settlement agreement with America's then-leading internet-only grocer to remedy allegations that its website was inaccessible to some individuals with disabilities. Settlement Agreement Between the United States of America and Ahold U.S.A., Inc. and Peapod, LLC, DJ 202-63-169 (Nov. 17, 2014), https://www.justice.gov/file/163956/download (last accessed June 13, 2023).

And as recently as 2022, DOJ published "Guidance on Web Accessibility and the ADA," reiterating that DOJ "has consistently imposed the ADA's requirements upon all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web." Civil Rights Division, Department of Justice, Guidance on Web Accessibility and the ADA (Mar. 18, 2022), https://www.ada.gov/resources/web-guidance/ (last accessed June 13, 2023) (identifying numerous agreements between the DOJ and public accommodations that tear down barriers to website accessibility for the visually impaired) .

The Court should reject Defendant's "physical nexus" requirement because it contradicts more than twenty years of DOJ authority and guidance.

> **(v)    Defendant owns, operates, and controls the property where Plaintiff was discriminated, thereby distinguishing this case from the Third Circuit cases Defendant cites without explanation.**

The many decisions from this District that reject Defendant's "physical nexus" argument recognize an important distinction between digital accessibility cases and the cases upon which Defendant relies—namely *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3d Cir. 1998), and *Peoples v. Discover Fin. Servs., Inc.*, 387 F. App'x 179 (3d Cir. 2010). *See supra* Section IV.C(i). To illustrate, in the current case, the Complaint alleges that "Defendant owns, operates, and/or controls its Digital Platform and is responsible for the policies, practices, and procedures concerning the Digital Platform's development and maintenance." (Doc. 1, ¶ 19.) This was not the case in *Ford* and *Peoples*. *See Ford*, 145 F.3d at 612-13 (defendant employer did not own, operate, or control the insurance office where discrimination occurred); *Peoples*, 387 F. App'x at 183-84 (defendant credit card company did not own, operate, or control the apartment where discrimination occurred). The indirect relationship between defendants and the places at issue is why Title III did not apply in *Ford* and *Peoples*, not some imaginary "physical nexus" requirement that renders Title III ineffective in a twenty-first century digital economy. The Court should reject Defendant's "physical nexus" argument because its reliance on *Ford* and *Peoples* is misplaced.

> **(vi)    If Defendant's understanding of *Ford* and *Peoples* were once correct, it has been superseded by controlling authority.**

Even if Defendant's reading of outdated, factually distinct Third Circuit case law were correct at the time *Ford* and *Peoples* were decided, superseding decisions from the Supreme Court, including *Wayfair* and *Bostock*, eliminate any grounds for a difference of opinion that once existed.

In *Bob Cochran*, this Court described the import of *Wayfair* to Title III:

> The Supreme Court's decision in *South Dakota v. Wayfair*, 138 S. Ct. 2080, 2091, 201 L. Ed. 2d 403 (2018) is also potentially instructive. There the Court overruled an earlier precedent which held that states could not require out-of-state retailers to

collect and remit sales tax on purchases made within the state unless the retailer "maintained a physical presence" in that state. *Id*. (overruling *Quill Corp. v. North Dakota*, 504 U.S. 298, 301, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992)). In doing so, the Supreme Court threw significant shade on the "physical presence rule," finding it was an "arbitrary, formalistic distinction." *Id*. at 2092. The Court noted that it wanted instead to create a rule "appropriate to the twenty-first century, not the nineteenth." *Id*. (quotation omitted). Specifically relevant to the issue in this case, the Court noted that "[m]odern e-commerce does not align analytically with a test that relied on the sort of physical presence defined by *Quill*," and that the physical presence rule "simply makes no sense." *Id*. at 2094-95. . . . Obviously, *Wayfair* was a tax case. But in *Wayfair*, the Supreme Court strongly intimates that artificial distinctions between "virtual" and "physical" commerce originally created during the early years of the internet are no longer tenable.

*Bob Cochran*, 2020 U.S. Dist. LEXIS 139887, at \*20 n.5. In light of *Wayfair*, the Court should reject Defendant's "physical nexus" argument because, since at least 2020, tests based on such an "arbitrary, formalistic distinction" as whether a company maintains a "physical presence" "simply make[] no sense."

### D. Defendant Violated Title III's Anti-Discrimination Mandate And Effective Communication Requirement.

As described above, Title III's anti-discrimination mandate broadly prohibits denying individuals with disabilities "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" provided by any public accommodation. 42 U.S.C. § 12182(a). This is supplemented by Title III's effective communication requirement, which "requires public accommodations to 'take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.'" *McGann*, 873 F.3d at 222 (emphasis omitted) (quoting 42 U.S.C. § 12182(b)(2)(A)(iii)).

Defendant violated Title III's anti-discrimination mandate and effective communication requirement by failing to ensure its ecommerce website is fully and equally accessible through screen reader software. The complaint alleges Defendant's policies are insufficient because its

online store contains communication barriers that "exclude [Plaintiff]—and millions of other potential consumers—from fully and equally enjoying Defendant's products and services." (Doc. 1, ¶ 6.) In support, the complaint alleges that Plaintiff visited Defendant's online store in February 2023. (*Id.*, ¶ 31.) During this visit, "[Plaintiff] found that he could not fully and equally access the Digital Platform[.]" (*Id.*) The Complaint describes some of these communication barriers, and others identified through investigations performed on Plaintiff's behalf. (*Id.*) For example, Plaintiff alleges that Defendant fails to notify blind shoppers, like him, of pop-up windows featuring promotional information, including an opportunity to "G Get 15% off! Sign up for our newsletter to get updates for the best that Pura has to offer, like new scents and brand partnerships." (*Id.*, ¶ 31(a).) As a result, Plaintiff alleges "it is impossible for Plaintiff to perceive this promotion independently, the effect of which would require him to pay more on his order than consumers who do not use screen reader technology to shop online." (*Id.*)

This unequal access violates Title III's anti-discrimination mandate, generally, and its effective communication requirement, specifically, because Defendant's failure to ensure that its Online Store is accessible to screen readers restricts, or outright prevents, Plaintiff from purchasing or accessing the goods and services Defendant offers consumers who are not blind.

Courts in this District have consistently denied similar Rule 12(b)(6) motions to dismiss, finding that plaintiffs who encountered similar barriers stated claims for which relief could be granted. In *Gniewkowski*, the plaintiff alleged she could not access the "financial services information" a bank provided on its website. *Gniewkowski*, 251 F. Supp. 3d at 918. The bank moved to dismiss the plaintiff's claims under Rule 12(b)(6). The Court denied the motion, finding that the plaintiff's inability to access the bank's financial services information gave rise to a claim under Title III. *Id.*; *see also West*, 2019 U.S. Dist. LEXIS 138379, at *15 (denying Rule 12(b)(6)

motion where plaintiff alleged she could not "access the content on Defendant's website"); *Suchenko*, 2018 U.S. Dist. LEXIS 139050, at *10 (same); *Suchenko*, 2018 U.S. Dist. LEXIS 129862, at *9 (same).

Consistent with these decisions, the Third Circuit recently explained that individuals with a disability have a right to "peruse" a public accommodation's goods and services. In *McGann*, another Title III case concerning the effective communication requirement and auxiliary aids, the Third Circuit explained:

> A bookstore offers customers the ability to select and purchase books from the store's shelves and inventory. Our case law and 28 C.F.R. § 36.307(a) instruct that a bookstore may not need to offer Brailled versions of books, if doing so would require altering the mix of goods provided. But we would have little trouble concluding that a bookstore had denied service to a customer if that customer was forbidden from perusing the store's existing selection or purchasing whatever book he or she chose. So, as the District Court's opinion implied and Cinemark does not dispute, the bookstore may need to provide an auxiliary aid or service to assist a customer who is blind with selecting and purchasing a book, so that he or she is not excluded from or denied the goods already offered by the bookstore, in violation of Title III.

*McGann*, 873 F.3d at 228 (internal citations omitted). Like the customer in *Gniewkowski* and the bookworm in *McGann*, the Complaint alleges that Defendant failed to provide an auxiliary aid or service necessary for Plaintiff to access the goods and services that Defendant already offers consumers who are not blind. As it has done before, and as the Third Circuit would likely find today considering *Wayfair* (2018), *Bostock* (2020), and *Riccio* (2020), the Court should find that these allegations state a claim under Title III's general anti-discrimination mandate and effective communication requirement. The Court should deny the pending motion.

## VI.    CONCLUSION

Plaintiff's complaint states a claim under Title III. Defendant—a public accommodation— denied Plaintiff—an individual with a disability—full and equal enjoyment of Defendant's good and services because Defendant's online store is not compatible with screen reader auxiliary aids,

in violation of the ADA's general anti-discrimination mandate and specific effective communication requirement. Plaintiff respectfully requests the Court deny Defendant's motion to dismiss.

Dated: August 11, 2023

*/s/ Lawrence H. Fisher*

Lawrence H. Fisher
Pa. No. 67667
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
Tel. (412) 577-4040
lawfirst@lawrencefisher.com

Kevin W. Tucker (He/Him) (PA 312144)
Kevin J. Abramowicz (He/Him) (PA 320659)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

*Attorneys for Plaintiff*